[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE CUTPA CLAIM
Bridgeport Hospital, Inc. and Southern Connecticut Health System, Inc., ("the hospital") have moved to strike the claims in the above-captioned cases that allege a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. CT Page 2509 Stats. §§ 42-110, et seq. These claims are alleged as the third counts of the complaints in Bonaffini v. BridgeportHospital, Clarke v. Bridgeport Hospital, Korchman v. BridgeportHospital and Babcock v. Bridgeport Hospital.[1] The same CUTPA claim is asserted in the third count of the counterclaim inBridgeport Hospital v. Cone.
The plaintiffs, or, in the case of Ronald Cone, the cross claimant, ("the patients") allege that they entered Bridgeport Hospital for non-emergency inpatient medical care in the first few months of 1997 and that they suffered complications because of an outbreak within the hospital population of methicillin-resistant staphylococcus aureus (MRSA), a bacterial infection that they allege is difficult to treat and potentially fatal to those suffering from other ailments. The patients allege that the hospital failed to advise them and their families of the existence and extent of the MRSA outbreak or the risk presented by it at the time of their admissions, depriving them of the opportunity to be treated at a different facility. The patients further allege that the hospital concealed from them them the pre-existing MRSA infection problem when they contracted the infection while hospitalized. The patients allege that the manner in which the hospital conducted itself toward them was based on business and economic considerations, including a desire to protect the reputation of the hospital, and not on considerations of their medical needs and welfare. In the same counts in which the patients make these allegations of decision-making based on the hospital's interests as a business entity, the patients also assert that its response to the MRSA infection outbreak violated standards of medical care.
The hospital has moved to strike the CUTPA counts made by each patient on the ground that the conduct claimed to constitute a violation of CUTPA is the exercise of professional medical judgment and compliance with applicable standards of care, subjects not within the realm of trade practices regulated by this statute.
Standard of Review
The function of a motion to strike is to test the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted. Novametrix Medical Systems,Inc. v. BOC Group, Inc., 224 Conn. 210, 214-215 (1992); Ferrymanv. Groton, 212 Conn. 138, 142 (1989); Practice Book § 10-39. CT Page 2510 The role of the trial court is to examine the complaint, construed in favor of the pleader, to determine whether the pleader has stated a legally sufficient cause of action. Dodd v.Middlesex Mutual Assurance Co., 242 Conn. 375, 378 (1997);Napoletano v. CIGNA Healthcare of Connecticut, Inc.,238 Conn. 216, 232-33 (1990).
In adjudicating a motion to strike, the court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff. Bohan v. Last, 236 Conn. 670, 675 (1996);Sassone v. Lepore, 226 Conn. 773, 780 (1993); Novametrix MedicalSystems, Inc. v. BOC Group, Inc., supra, 224 Conn. 215; Gordon v.Bridgeport Housing Authority, 208 Conn. 161, 170 (1998). The requirement of favorable construction does not extend, however, to legal opinions or conclusions stated in the complaint, but only to factual allegations and the facts "necessarily implied and fairly provable under the allegations." Forbes v. Ballaro,31 Conn. App. 235, 239 (1993). Conclusory statements or statements of legal effect not supported by allegations of fact will not enable a complaint to withstand a motion to strike. Mingachos v.CBS, Inc., 196 Conn. 191, 108 (1985); Fortini v. New England LogHomes, Inc., 4 Conn. App. 132, 134-35, cert. dismissed,197 Conn. 801 (1985).
Scope of CUTPA
In Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 33
(1997), the Connecticut Supreme Court reiterated its conclusion that the provision of medical services falls within CUTPA's definition of trade or commerce as "the distribution of any services." The Court confirmed in Haynes its position, which it has steadfastly maintained in considering the application of CUTPA to the provision of professional services, both legal and medical, that only the "entrepreneurial or commercial aspects of the profession are covered . . ." The Court explained that
 Although physicians and other health care providers are subject to CUTPA, only the entrepreneurial or commercial aspects of the profession are covered, just as only the entrepreneurial aspects of the practice of law are covered . . . [t]he noncommercial aspects of lawyering — that is, the representation of the client in a legal capacity — should be excluded for public policy reasons.
Haynes v. Yale-New Haven Hospital, supra, 243 Conn. 34-35, CT Page 2511 quoting Heslin v. Law Clinic of Trantolo Trantolo,190 Conn. 510 (1983); and Jackson v. R.G. Whipple, Inc., 225 Conn. 705,730-31 (1993).
The conduct that was claimed to constitute a CUTPA violation in Haynes was the hospital's holding itself out as a major trauma center when, the plaintiff alleged, it lacked the level and quality of staffing required of such facilities. The Supreme Court recognized the dichotomy between "claims that relate to actual competence of the medical practitioner" and "claims implicating entrepreneurial aspects of the practice of medicine."Haynes v. Yale-New Haven Hospital, supra, 243 Conn. 35-37. Affirming the trial court's granting of summary judgment on the CUTPA claim, the Supreme Court stated:
 We thus conclude that the touchstone for a legally sufficient CUTPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services aside from medical competence is implicated, or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel. Medical malpractice claims recast as CUTPA claims cannot form the basis for a CUTPA violation."
Haynes v. Yale-New Haven Hospital, supra, 243 Conn. 38.
Without articulating any analysis to be applied to the issue of a professional's representations concerning the scope of services competently performed, the Court in Haynes went on to observe that Yale-New Haven Hospital was in fact certified as a major trauma center. The fact that the Court determined that it should examine that issue is an indication that a false representation of a certification may be considered entrepreneurial or commercial. Having ascertained that the representation was accurate, however, the Court observed that the representation meant that the facility would conduct itself in accordance with the standard of care applicable to such facilities, but that if it failed to do so, "the remedy is not one based on CUTPA." Haynes v. Yale-New Haven Hospital, supra,243 Conn. 37[2].
It would be possible, in virtually all suits in which a professional was alleged not to have performed as required by the applicable standard of care, also to allege that the practitioner held himself or herself out to possess the level of expertise CT Page 2512 required to perform the service at issue, and that failure to perform in accordance with that representation therefore constituted a deceptive or unfair trade practice. The Court's analysis in Haynes is that an allegation of this sort does not state a cause of action under CUTPA, at least where, as inHaynes, there is no factual misrepresentation concerning licensure or certification. "Holding out" of professional competence, absent an actual misrepresentation or some practice unrelated to the provision of the care, is apparently what the Court considered in Haynes to be the "recasting" of malpractice claims as CUTPA claims.
The patients whose claims are the subject of the hospital's motions to strike have not alleged that the hospital misrepresented its licensure or falsely stated that it was certified to perform medical services that it was not authorized to perform. Though in a very broad sense it is always "entrepreneurial" for any fee-charging medical facility to admit patients, the real issue that the patients in these cases raise is whether it was within the medical standard of care to admit surgical patients under the alleged condition that the facility was experiencing a MRSA outbreak that posed an additional risk to patients who would potentially be exposed to bacterial disease. The patients allege that the hospital failed to alert them and their families of the conditions at the hospital, lest they decide to go elsewhere. The patients do not allege any misrepresentations of fact, but only of a failure to advise of potential risk greater than they anticipated through their expectations of what the conditions at a hospital are. Though they argue that failure to advise of an allegedly heightened risk is tantamount to misrepresentation, the patients' claims very much resemble the claim in Haynes: that the conditions and services actually available were less favorable than what the facility implied by admitting patients with particular needs.
The plaintiffs have also argued that, read in the favorable way required upon a motion to strike, their pleadings allege a business-motivated cover-up of the presence of MRSA. They urge on the court a test by which financially-motivated conduct by a professional is actionable under CUTPA while the quality of services performed is not. This "test" is illusory. A vast number of deviations from the standard of care can later be shown to have a lower cost in time or money than conduct compliant with the standard of care. A reduced level of staffing could be characterized as part of a business practice of cutting costs, CT Page 2513 yet the Court in Haynes viewed such issues as outside the coverage of CUTPA, absent such additional issues as misrepresentation.
The patients further assert that even if the hospital's conduct in admitting them as patients is not actionable as an unfair trade practice, it engaged in a "cover-up" of the existence of MRSA. At oral argument, counsel for the patients argued as though the pleadings stated that the hospital had misrepresented to the patients the source of their alleged infection in an entrepreneurial effort to avoid liability. The actual pleadings contain no such allegation; rather, they are limited to the claimed failure to advise of the outbreak in connection with admission to the facility and evasiveness about the severity of a patient's condition, not about the source of infection. Plaintiff Clarke alleges only a delay in informing him and his family that he had contracted an MRSA infection. The patients' claims of injury are based on exposure to and effects of MRSA infection, not from any misrepresentation concerning the source of that infection nor from any delay in learning of such infection. Because these claims are not made, this court does not rule on their sufficiency under CUTPA
Contrary to the patients' assertions, their CUTPA counts do not resemble the claims at issue in Doe v. Stamford Hospital, 1998 WL 182411 (Conn.Super. Apr. 8, 1998). In that case, a patient alleged that a hospital had caused her additional expense by refusing to allow laboratory slide to be examined in aid of a malpractice claim. The court, D'Andrea, J., ruled that this allegation supported a cause of action for CUTPA because the expense inflicted was part of a commercial practice unrelated to patient care. The patients in the cases before this court, by contrast, allege no practice or conduct separate from the provision of medical care during their hospitalization.
While, as has been stated above, the standard to be used in adjudicating a motion to strike requires a favorable reading of the allegations of the complaint, this standard does not require a court to imply the pleading of crucial allegations that are neither present nor reasonably inferable from any actual allegation of the complaint. If the patients have a basis for making a claim of post-treatment practices like those at issue inDoe v. Stamford Hospital, supra, they will certainly do so in pleading over, as permitted by Practice Book § 10-44. Likewise, if they have any basis for making a claim of CT Page 2514 intentional misrepresentation, they may do so in pleading over. No such allegations can fairly be read into their present pleadings, which are instead, a recasting of the malpractice claims concerning the admission of patients during an alleged MRSA outbreak and the adequacy of the steps taken to protect the patients from infection.
Conclusion
The motions to strike the CUTPA claims are granted in all five cases.
Beverly J. Hodgson, Judge of the Superior Court